# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| EMPLOYERS PREFERRED INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 15-cv-1500 |
| v. | ) ) | Honorable Joe B. McDade |
| C&K HOTEL GROUP, LLC and CORINE WATTS, | ) ) ) | |
| Defendants. | ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendant C&K Hotel Group, LLC's "Motion And Brief In Support Of Its Motion To Reconsider Or Otherwise Re-Hear, Amend, Vacate The Court's September 14, 2017 Summary Judgment" (Doc. 54). Plaintiff, Employers Preferred Insurance Company (hereinafter "EPIC") has filed a brief in opposition and the matter is ready for decision. For the reasons stated below, C&K Hotel Group, LLC's motion (Doc. 54) is DENIED.

### LEGAL STANDARDS

There is no actual motion to reconsider contemplated by the Federal Rules of Civil Procedure. Nevertheless, Federal Rules of Civil Procedure 59 and 60 allow judgments to be modified and, in some cases, vacated when necessary. A motion to alter or amend judgment pursuant to Rule 59(e) may only be granted if a movant clearly establishes that the court made a manifest error of law or fact, or presents newly discovered evidence. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th

1

Cir. 2007) (citing *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)). "[A] Rule 59(e) motion is not properly utilized 'to advance arguments or theories that could and should have been made before the district court rendered a judgment.'" *Id.* (quoting *LB Credit Corp.*, 49 F.3d at 1267). Rule 60(b) allows a party relief from a final judgment or order for a number of reasons. CK asserts that it makes its motion pursuant to Rule 60(b)(1) and (6).

Rule 60(b)(1) allows a court to correct mistakes, inadvertences, surprises, or issues of excusable neglect in final orders or judgments while (b)(6) allows the court correct such final judgments or orders for any justifiable reason. Fed. R. Civ. P. 60. The substance of CK's contentions reveal that CK is not complaining of mere clerical mistakes under Rule 60(b)(1) but rather is complaining of alleged errors in this Court's application of the law and its understanding of the facts. The catchall provision of Rule 60(b)(6) has an even more demanding standard than that of Rule 59(e); it requires that a movant to show "extraordinary circumstances" justifying the reopening of a final judgment. *Gonzalez v. Crosby*, 545 U.S. 524, 535, 125 S. Ct. 2641, 2649, 162 L. Ed. 2d 480 (2005); *Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006). Therefore, Rule 59(e)'s standard is more applicable here. However, since CK has invoked both Rules 59(e) and 60, the Court will consider whether any extraordinary circumstances are present to warrant relief from the Court's Opinion and Order dated September 14, 2017 (Doc. 52) as well as whether the Court made any manifest errors of law or fact in its decision.

## BACKGROUND

EPIC is an insurance company that extended a workers' compensation insurance policy and renewal policy to C&K Hotel Group, LLC (hereinafter "CK") in conjunction with a hotel that CK owns and operates in Bloomington, Illinois. That hotel does business as the Hawthorn Suites and Conference Center. In August of 2014, Corine Watts filed an Application for Adjustment of Claim with the Illinois Workers' Compensation Commission, alleging that she was injured on July 11, 2014 while putting away a sofa bed as part of her duties for her employer, CK, in its hotel.

EPIC provided workers' compensation insurance to CK under an insurance policy numbered EIG 1594376-00, which was effective from November 16, 2012 to November 16, 2013 (hereinafter the "00 policy") and was conditioned upon payment of specific premiums payable in future installments subject to annual audit for retrospective premiums. The 00 policy contained a provision stating that it would automatically be extended for one year unless EPIC gave CK sixty days' notice that it was not renewing the policy. The 00 policy was so extended and a renewal policy was issued by EPIC to CK on November 16, 2013, and given the number EIG 1594376-01 (hereinafter the "01 policy"), which was also conditioned upon payment of specific premiums payable in future installments subject to annual audit for retrospective premiums. Both the 00 and the 01 policies (Doc. 4-1) contained identical operative provisions. For a detailed discussion of those provisions, see this Court's Opinion and Order (Doc. 52) dated September 14, 2017.

The crux of this case was that EPIC claimed it cancelled the operative policy issued to CK before Ms. Watts sustained an injury and thus it claimed it had no duty either to defend CK in the underlying workers compensation lawsuit brought by Ms. Watts or to indemnify CK for any damages CK must ultimately pay Ms. Watts. CK argued that EPIC did not comply with Illinois law in attempting to cancel the policy and EPIC waived its right to contend the policy was cancelled for a variety of reasons. The Court found in favor of EPIC. Now CK contends that the Court erred in its ruling and reconsideration is necessary.

## DISCUSSION

As an initial matter, the Court must point out that it finds CK's motion and supporting brief to be difficult to follow. While the Court can discern the substance of CK's contentions, its citations to other documents and the disjointed placement of its arguments make the document hard to read and cumbersome to sort through. For these reasons, the Court will primarily address the issues in the order EPIC has presented them in its opposition brief.

**I.    The Court Did Not Err In Its Treatment Of CK's Factual Assertions and Responses.**

CK's first point of error is that the Court erred in treating its purported disputed facts as undisputed for its failure to comply with Local Rule 7.1(D). The Court found that Defendant CK responded to EPIC's facts in a confusing manner inconsistent with Local Rule 7.1(D). CK listed several facts as both undisputed and disputed. Moreover, the Court also found CK failed to support each claim of disputed fact with evidentiary documentation by specific page as directed by the local rule. CK's failure to comply with the local rule confused the Court, hindered

4

the Court's ability to discern the import of CK's statements and impeded an efficient disposition of the cross-motions.

The Court did not summarily enter summary judgment for EPIC based upon CK's failure to comply with the local rule, rather it merely deemed certain factual assertions to be admitted, as it was well within its discretion to do. The Seventh Circuit has repeatedly upheld the strict enforcement of the local rules and has sustained the entry of summary judgment when the non-movant has failed to submit a factual statement in the form required by the local rules. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir. 1994) *see also Ehrhart v. Secretary of Health & Human Services,* 969 F.2d 534, 537 (7th Cir. 1992) ("Once again we observe that compelling the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources."). For these reasons, the Court did not err in its treatment of the facts of this case.

## II. The Court Did Not Err When It Considered Evidence of the Amount In Controversy.

Next, CK takes issue with this Court's acceptance of certain evidence bearing on this Court's diversity jurisdiction over the action. CK argued that the ultimate amount of Ms. Watts' worker's compensation claim was not conclusively determined and thus there is no way this Court could determine that the $75,000 jurisdictional minimum was met. EPIC presented evidence that Ms. Watts' workers' compensation attorney made a demand via email correspondence on EPIC to pay Ms. Watts in excess of $500,000 for damages she suffered as a result of the accident she endured while in the employ of CK. (Doc. 48-1 at 3). CK claims this evidence is

hearsay and inadmissible. CK also argues this Court erred in giving any credence to Ms. Watts' admission to EPIC's allegation that "the amount of recovery she is seeking in the workers' compensation claim, including medical expenses, lost wages and compensation for pain and suffering, exceeds the sum of $75,000." (Doc. 18 at 1, Doc. 4 at ¶¶ 4 and 5) because such evidence is allegedly insufficient to prevail on a motion for summary judgment. (Doc. 54 at 3).

First, assuming arguendo that the correspondence from Watts' attorney to EPIC's attorney was hearsay, such evidence would still be admissible for purposes of determining jurisdiction. *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (holding that settlement offers can be used in evidence for the purpose of determining diversity jurisdiction by establishing the amount in controversy); *see also*, *Knowles Pub. v. Am. Motorists Ins. Co.*, 248 F.3d 1139 (5th Cir. 2001) ("although the affidavits may be hearsay or are conclusory statements … this circuit's precedent indicates that they are admissible for proving the amount in controversy necessary for federal subject matter jurisdiction.").

Second, the statement is not hearsay. Hearsay is a statement that a party offers into evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). The correspondence was not offered to prove that Ms. Watts suffered damages in the amount of $500,000 or that CK is liable for Ms. Watts' damages. The statement was offered into evidence to show there was a good faith basis to estimate the amount at issue between EPIC and CK would exceed $75,000 even though the amount had not been conclusively determined.

Finally, Ms. Watts' admission to EPIC's allegation that "the amount of recovery she is seeking in the workers' compensation claim, including medical expenses, lost wages and compensation for pain and suffering, exceeds the sum of $75,000" (Doc. 18 at 1, Doc. 4 at ¶¶ 4 and 5), is absolutely admissible and relevant. "The Seventh Circuit has firmly held that in jurisdictional determinations the Court may consider any evidence submitted on the issue, as well as the jurisdictional allegations in the Complaint." *Salmi v. D.T. Mgmt., Inc.*, No. 02 C 2741, 2002 WL 31115581, at *2 (N.D. Ill. Sept. 23, 2002).

For these reasons, the Court did not err in accepting and consulting the evidence offered by EPIC in support of the amount in controversy to establish diversity jurisdiction.

### III. The Evidence Established That EPIC Complied with Illinois law Regarding Cancellation of the Policy.

CK's third point of alleged error is that the Court erred in considering EPIC's proof of mailing sufficient to warrant summary judgment. Illinois law holds that proper cancellation requires proper mailing of notice and retention of proper proof of notice. 215 Ill. Comp. Stat. 5/143.14(a). <u>Proof of actual receipt of the notice is not required.</u> *See, e.g.*, *Ragan v. Columbia Mut. Ins. Co.*, 701 N.E.2d 493, 497 (Ill. 1998) ("The language of section 143.14(a) is clear and unambiguous. First, it requires that the insurance company mail a notice of cancellation to the insured, and if applicable, to certain other parties. Second, the statute requires that "[t]he company shall maintain proof of mailing." (Emphasis added.) 215 ILCS 5/143.14(a) (West 1994). There is no alternative method for proving compliance with the proof of

7

mailing requirements other than to maintain the proof of mailing. To allow other methods of proving compliance would circumvent the language and purpose of the statute…. The statute, therefore, requires proof of mailing rather than proof of receipt by the insured.").

EPIC provided an affidavit from one of its employees, Wayne Piotrowski,[1] in which he averred that EPIC provided notice of the pending cancellation of CK's policy to the National Council on Compensation Insurance ("NCCI") and that the notice was received by the NCCI on May 28, 2014 (more than 10 days before the effective date of cancellation). (Doc. 45-9). "The NCCI is an organization which the IWCC contracted with to delegate some of its duties, including receiving and maintaining certificates of insurance and notices of termination of insurance coverage under section 4 of the Workers' Compensation Act." *Hastings Mut. Ins. Co.*, 2012 IL App (1st) 101751, ¶ 4, 965 N.E.2d at 659. Piotrowski further averred that EPIC has an affiliation agreement with the NCCI, through which the NCCI has agreed to transmit insurance policy information from EPIC, including notices of policy cancellations, to the IWCC.

EPIC also submitted the affidavit of Timothy Spears, Vice-President of Underwriting for EPIC, to verify that the NOC provided by EPIC (Doc. 4-3) was a

---

[1] CK takes issue with this Court's consideration of Piotrowski's affidavit. The Court already explained in its Order and Opinion (Doc. 52 at 29-32) why the affidavit was proper. The Court need not revisit the issue. CK also claims the affidavit does not provide that the IWCC received the NOC. CK is simply wrong as the affidavit clearly provided that EPIC met the requirement that the IWCC receive the NOC by sending the NOC to the NCCI *per* an agreement allowed under the law as discussed above.

8

true and accurate copy of the actual NOC generated on May 27, 2014. In his affidavit, Spears also averred that he had personal knowledge of the facts set forth in the document. He stated that EPIC maintains a duplicate copy of each NOC it sends to insureds in an electronic system called Image Right. He stated he personally reviewed the records maintained in Image Right and based on such review, he attested that that the NOC provided by EPIC (Doc. 4-3) was a true and accurate copy of the actual NOC generated on May 27, 2014.

In his deposition, Spears testified that he did not know how the actual NOC that was mailed to CK would have been placed in an envelope. Spears also testified there was someone in the mailroom who would have placed the actual NOC in the mail, although he could not confirm who or how the actual NOC would have been placed in the envelope. (Doc. 45-4 at 63-64). The Court found that was not an actual fact in genuine dispute because CK produced nothing to establish that EPIC failed to place the NOC in the mail. CK seizes on this purported failure to argue that summary judgment is inappropriate, but CK is incorrect.

In *Hunt v. State Farm Mut. Auto. Ins. Co.*, 2013 IL App (1st) 120561, ¶¶ 34-42, 994 N.E.2d 561, 570–72, an Illinois appellate court rejected an insured's arguments that its policy had not been effectively cancelled. The *Hunt* court relied heavily on *Ragan*, 701 N.E.2d 493—as did this Court—to conclude that State Farm complied with Section 5/143.14(a). In holding that the circuit court had not erred when it found that State Farm complied with 215 Ill. Comp. Stat. 5/143.14(a), the *Hunt* court rejected the plaintiff's arguments, one of which was that even though the proof of mailing showed that a letter was mailed, it did not show that the letter

9

contained the actual cancellation notice. *See* 2013 IL App (1st) 120561, ¶¶ 34-42, *see also* 2012 WL 10235579 (Ill. App. Ct. 1 Dist.), 15 (Brief of Defendant/Appellee State Farm Fire and Casualty Company). Thus, both *Hunt* and *Ragan* not only support, they compel the conclusion that Spears' alleged failure to account for what was actually in the envelope mailed to CK is of no significance.

CK also offers a version of form FS 3877 that was not even in use at the time of the mailing to try to demonstrate that the form offered into evidence by EPIC was somehow deficient. CK ignores that the court in *Hunt* also concluded that the same proof of mailing form that was used by EPIC here is a recognized U.S. Post Office proof-of-mailing form or, at the least, one "acceptable to the U.S. Post Office" for purposes of complying with the statute's "proof of mailing" requirement. 2013 IL App (1st) 120561, ¶ 42, 994 N.E.2d 561, 572. Thus, CK's arguments have no merit.

**IV.** **There Has Been No Violation Of Substantial Justice.**

As a final volley, CK contends that EPIC's actions in maintaining this action while staying the underlying workers' compensation action "shocks the conscious" and "derails the very notion of fairness and substantial justice that is the backbone of the administrative and judicial systems of the state of Illinois and United States of America". (Doc. 54 at 8).

The Court empathizes with CK but a quick search through the Federal and Illinois case reporters reveals that it is not in any way abnormal for insurers to seek declaratory judgments that they need not defend nor indemnify insureds under

10

various factual scenarios and legal theories before the underlying actions are concluded. This Court does not see how CK has been deprived of justice.[2]

## CONCLUSION

For the reasons stated above, this Court made no manifest errors of law or fact, nor are there any extraordinary circumstances present to warrant relief from the Court's Opinion and Order dated September 14, 2017 (Doc. 52) that denied CK's Motion for Summary Judgment (Doc. 46) and granted EPIC's Motion for Summary Judgment (Doc. 45). Therefore, Defendant C&K Hotel Group, LLC's "Motion And Brief In Support Of Its Motion To Reconsider Or Otherwise Re-Hear, Amend, Vacate The Court's September 14, 2017 Summary Judgment" (Doc. 54) is DENIED. So Ordered.

Entered this 13th day of November, 2017.

s/ Joe B. McDade<br>
JOE BILLY McDADE<br>
United States Senior District Judge

---

[2] It bears mentioning that if anyone deprived CK of what can be deemed "justice" as the facts have been presented to this Court, it would be the representative of Northern Illinois Insurance Agency who flippantly, yet not illegally, refused to request a reinstatement or any accommodation when so asked. (Doc. 46-3 at 25).